IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RICKY CARTER                                                                              PLAINTIFF

v.                                       NO. 3:14-cv-00160 JJV

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration                                                     DEFENDANT

### MEMORANDUM OPINION AND ORDER

Plaintiff Ricky Carter ("Carter") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Carter maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why.[1] Carter first maintains that the ALJ committed error at step three of the sequential evaluation process. Carter maintains that his intellectual impairment meets Listing 12.05C, and the ALJ erred when he failed to so find.

At step three, the ALJ must determine whether a claimant's impairment, when considered individually and in combination with his other impairments, meets or equals a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The

---

[1]The issue at bar is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

determination is a medical one, see Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that his impairment meets or equals a listed impairment, see Pyland v. Apfel, 149 F.3d 873 (8th Cir. 1998).

Listing 12.05 addresses intellectual disability, previously identified as mental retardation. The introductory paragraph of Listing 12.05 explains that the disability refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, the evidence demonstrates or supports onset of the impairment before the claimant's twenty-second birthday. A claimant with an intellectual disability meets Listing 12.05 by satisfying the requirements of the introductory paragraph, see Maresh v. Barnhart, 438 F.3d 897 (8th Cir. 2006) (requirements of introductory paragraph mandatory), and one of the following four paragraphs contained in the listing:

A) Paragraph A, or 12.05A, which requires proof of a "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and [an] inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;"

B) Paragraph B, or 12.05B, which requires proof of a "valid verbal, performance, or full scale IQ of 59 or less;"

C) Paragraph C, or 12.05C, which requires proof of a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;" and

D) Paragraph D, or 12.05D, which requires proof a "valid verbal, performance, or

full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration."

The ALJ found that Carter's severe impairments include borderline intellectual functioning. At step three, the ALJ found that the impairment does not meet Listing 12.05, specifically finding the following:

> Although the psychological consultative examiner Dr. Gibbard determined that the claimant's full scale IQ score was 70, there is no evidence that the claimant depends on others for his personal needs. Nor is there sufficient evidence that the claimant, in addition to his Full Scale IQ score between 60 and 70, suffers another physical or mental impairment imposing an additional and significant work-related limitation. The claimant can still walk, drive a car, grocery shop, do laundry, and wash dishes.

See Transcript at 21. With specific regard to Listing 12.05D, the ALJ found that Carter has only mild restrictions in his activities of daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and "there is no evidence of record showing that the claimant has experienced any episodes of decompensation of extended duration." See Transcript at 22.

The ALJ's finding at step three is not a model of clarity; is error, albeit harmless; and contains an omission. The Court so finds for three reasons. First, the ALJ found that although Suzanne Gibbard, Ph.D., ("Gibbard) diagnosed Carter with a full scale IQ of seventy, there is no evidence he "depends on others for his personal needs." The ALJ failed to note, though, that the evidence is relevant to Listing 12.05A and has limited relevance in determining whether Carter's intellectual disability meets Listing 12.05C.

Second, the ALJ found that although Carter has a full scale IQ of between sixty and seventy as required by Listing 12.05C, he does not suffer from "another physical or mental impairment imposing an additional and significant work-related limitation." It is clear, though, that he suffers from other such impairments.[2]

Third, the ALJ did not specifically address whether Carter had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." It was only in the context of considering Listing 12.05D that the ALJ considered Carter's adaptive functioning, and it was only in the context of assessing Carter's residual functional capacity that the ALJ made significant mention of Carter's difficulties in school.

Notwithstanding the foregoing, substantial evidence on the record as a whole supports the ALJ's finding as Carter has failed to show that his intellectual disability meets Listing 12.05, specifically, Listing 12.05C. The Court so finds for two reasons.

First, Carter has produced little evidence that his general intellectual functioning

---

[2]At step two of the sequential evaluation process, the ALJ found that Carter has severe impairments other than borderline intellectual functioning, impairments that have "'more than a minimal effect on [his] ability to work.'" See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)]. The other "physical or mental impairment imposing an additional and significant work-related limitation" required by Listing 12.05C, though, need not necessarily be a "severe" impairment. Instead, the impairment must only have a "more than slight or minimal effect" on the claimant's ability to perform work. See Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986). Although the "more than a minimal effect" standard is likely different than the "more than slight or minimal effect" standard, the ALJ's findings indicate that Carter's other impairments satisfy both standards.

was "significantly subaverage" prior to his twenty-second birthday.³ The evidence of his general intellectual functioning was largely confined to his testimony.⁴ During the administrative hearing, he testified that he was assigned to special education classes, typically earned low grades, and was required to repeat the fourth grade. See Transcript at 40-41, 53. His testimony does not demonstrate or support onset of an intellectual disability before his twenty-second birthday. It is impossible to know who made the decision to assign him to special education classes, see Cheatum v. Astrue, 388 Fed.Appx. 574 (8th Cir. 2010) (no indication that recommendation regarding classroom placement made by qualified individual), and it is not clear whether his poor performance in school was due to his general intellectual functioning. Moreover, it should be noted that despite his poor performance in school and his difficulties reading and writing, he graduated from high school. See Transcript at 40.

Second, Carter has failed to show that his deficits in adaptive functioning began to manifest prior to his twenty-second birthday.⁵ As the Court noted, the ALJ considered

---

³In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), the United States Court of Appeals for the Sixth Circuit Court "split up its analysis of the 'significantly subaverage general intellectual functioning' and the 'deficits in adaptive functioning' parts of the test." See McMillan v. Commissioner of Social Security, 2012 WL 90264 at 3 (W.D.Mich. 2012). The Court does likewise.

⁴Carter has not produced any school records to support his assertion of significantly subaverage general intellectual functioning prior to his twenty-second birthday. The ALJ agreed to leave the record open for thirty days after the conclusion of the administrative hearing for Carter to submit his school records. See Transcript at 52, 71. There is no indication he took advantage of that opportunity.

⁵The introductory paragraph of Listing 12.05 does not define "deficits in adaptive functioning." It does, though, provide "criteria for assessing the 'severity' required by [paragraph C] of some other mental impairments and by [paragraph D] of Listing 12.05."

Carter's adaptive functioning in the context of considering Listing 12.05D. With respect to Carter's activities of daily living, the ALJ found that Carter is capable of caring for himself, washing dishes, doing laundry, and some shopping. See Transcript at 21, 185-188.[6] With respect to Carter's social functioning, the ALJ found that Carter has no trouble getting along with others and spends time with others watching television. See Transcript at 21-22, 189. With respect to Carter's concentration, persistence, or pace, the ALJ found that although Carter has difficulty reading and writing, he is able to concentrate enough to drive an automobile, go shopping, and remember to take his medicine. See Transcript at 22, 40, 58.

Carter offers a second reason why the ALJ's findings are not supported by substantial evidence on the record. Carter maintains that the assessment of his credibility was flawed, which in turn caused the ALJ to craft an improper hypothetical

---

See Durden v. Astrue, 586 F.Supp.2d 828, 834 (S.D.Tex. 2008). These criteria include the following:

> ... "adaptive activities of daily living," (such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office"), "social functioning" (including "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers") and "concentration, persistence, or pace" (defined as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work setting.").

See Id. [quoting Listing 12.00(C).

[6]The ALJ so found despite Carter testifying that his activities of daily living are severely restricted. See Transcript at 61. It is possible that his restricted activites are more a matter of personal choice than caused by a limitation brought about by an impairment.

question.

The ALJ is obligated to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). In making the assessment, the ALJ must evaluate the claimant's credibility regarding his subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ is required to consider, "in addition to objective medical evidence, any evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

The ALJ assessed Carter's residual functional capacity and found that he is capable of performing light work with some additional limitations. In so finding, the ALJ determined that Carter's subjective complaints were "not entirely reliable," see Transcript at 25, because his complaints were inconsistent with the evidence. A vocational expert testified that there is work available for a individual with Carter's work-related restrictions, and the ALJ relied upon the vocational expert's testimony at step five of the sequential evaluation process and found that there is work Carter can perform.

The ALJ's evaluation of Carter's credibility is supported by substantial evidence on the record as a whole. The evaluation conforms to the requirements of Polaski v. Heckler and is one of the acceptable evaluations permitted by the record.

The ALJ found that Carter's subjective complaints were inconsistent with the

medical evidence. For instance, Roger Troxel, M.D., ("Troxel") performed a consultative examination of Carter's physical residual functional capacity in March 2012. See Transcript at 236-240. Troxel recorded Carter's complaints of pain but noted that he was only taking over-the-counter medication. Troxel observed that although Carter had a limited range of motion in his right hip and right knee, he had a full range of motion in his other joints. Troxel found that Carter had a moderately decreased ability to lift, stand, or carry but had no significantly decreased ability to, inter alia, walk or sit. Troxel diagnosed Carter with osteoarthritis in his knee and pelvis and diagnosed lumbar spondylosis. There is nothing about Troxel's findings to suggest that Carter has work-related limitations more severe than those found by the ALJ.

Carter presented to the Great River Charitable Clinic in August 2012 complaining of pain in his elbow, back, hip, and knees. See Transcript at 258-262. Although crepitance was noted, he otherwise had a normal range of motion in his knees. He was diagnosed with degenerative joint disease and prescribed Tylenol. He returned in October 2012, but nothing of significance was noted. There is nothing about these progress notes, and the conservative treatment prescribed, to suggest that he has work-related limitations more severe than those found by the ALJ.

The ALJ found that Carter's subjective complaints were inconsistent with the non-medical evidence. The ALJ also found that Carter's daily activities were inconsistent with disabling pain. It is true that he testified his daily activites are severely restricted, but it is possible that the restrictions are more a matter of personal choice than caused

by a limitation brought about by an impairment.[7] The ALJ also found that Carter has received only conservative treatment for his pain, taking only over-the-counter medication. The ALJ considered that despite Carter's assertion that he has difficulty reading and cannot write, he graduated from high school, obtained a Commercial Driver's License, and worked as a commercial truck driver. He also has past work as a visual inspector, work that the Dictionary of Occupational Titles classifies as requiring some level of reasoning.

The ALJ is charged with assessing credibility, and Carter has offered no legitimate reason for questioning the ALJ's assessment of credibility. The interpretation of the evidence by the ALJ in light of the Polaski v. Heckler factors is one of the acceptable interpretations, and it cannot be said that his assessment of Carter's credibility was flawed.

The ALJ relied, in part, upon the assessment of Carter's credibility in assessing his residual functional capacity and in crafting a hypothetical question. Given the ALJ's acceptable assessment of Carter's credibility, he has failed to show the hypothetical question was improper.

Given the foregoing, there is substantial evidence on the record as a whole to

---

[7]Carter testified that his typical day consists of the following:

> I get up out the bed, I clean my little room up, walk in the living room, see how my mom doing. That's about mostly it. Walk around the house and if she got to go to the store or something I might go to the store with her. That's about it.

See Transcript at 61.

support the ALJ's findings. Carter's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 28th day of April, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE